Opinion issued October 1, 2009









 
 





In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-08-00710-CR
NO. 01-08-00711-CR
____________


TAMINA DENISE HAMID, Appellant

v.

THE STATE OF TEXAS, Appellee





On Appeal from the 434th District Court
Fort Bend County, Texas
Trial Court Cause Nos. 44,560 & 44,650



 
MEMORANDUM OPINION

          A jury convicted appellant, Tamina Denise Hamid, of the felony offenses of
aggravated robbery


 and attempted capital murder of a peace officer.


 Tex. Penal
Code Ann. § 15.01 (Vernon 2003), § 19.03 (Vernon Supp. 2008), §§ 29.02, 29.03
(Vernon 2003). The causes were tried together and a jury found appellant guilty of
both offenses. For each of the offenses, the jury assessed Hamid’s punishment at life
in prison, with a $10,000 fine.
          Appellant contends that the evidence adduced at trial was legally and factually
insufficient to support her convictions for (1) aggravated robbery and (2) attempted
capital murder of a peace officer. 
          We affirm.
I. Factual Background
          While on patrol at approximately 9:45 a.m. on June 2, 2006, Officer Kelly
Davis of the Meadows Place Police Department observed a Toyota 4Runner, in which
appellant was a passenger, pass in front of her making a loud noise. In order to 
investigate the noise, Officer Davis followed the vehicle in her police car. As Officer
Davis neared the vehicle, she observed the vehicle accelerate and run through a
stoplight. Officer Davis activated her lights and siren to initiate a stop, but the
4Runner continued driving erratically as it turned into a residential neighborhood. 
Officer Davis observed appellant in the passenger side of the vehicle, waving a gun
in the Officer’s direction.
          Sergeant Eissler, also with the Meadows Police Department, joined the pursuit
after hearing Officer Davis say over the radio that a passenger in a vehicle pointed a
gun at her. Sergeant Eissler accelerated in his vehicle to catch up to the 4Runner. 
Sergeant Eissler saw the driver, Joseph Flores, pull out a gun and fire it in the
direction of the Sergeant. Sergeant Eissler was shot in the shoulder, but despite being
wounded, returned fire on the 4Runner. Officer Davis stopped to aid Sergeant
Eissler, but he told Officer Davis to continue the pursuit of the suspects. 
          Appellant and Flores pulled into a gas station. Jeff Drescher was at the station
when he heard gunshots and saw the 4Runner and a police car come speeding into the
station. Drescher ducked behind his truck. The 4Runner stopped in front of
Drescher’s truck, and Flores got out of the 4Runner pointing a gun at Drescher and
screaming something at him. Drescher started to back away from his truck. Flores
got into the driver’s seat, followed by appellant, who jumped in the driver side and
crawled over Flores to the passenger seat. Drescher testified that appellant “very
willingly” went with Flores into the vehicle. Flores started the truck and sped off. 
          Officer Davis followed in pursuit of the truck. Several other patrol cars joined
the chase, including Sergeant Mike Waller of the Fort Bend County Sheriff’s Office. 
Eventually, Sergeant Waller got close enough to the pickup truck to see inside the
vehicle. Sergeant Waller saw appellant point a gun at him and fire “a couple of
rounds.” As the chase continued, appellant shot several more rounds at Sergeant
Waller, at one point leaning out of the passenger window of the truck to take aim at
him. In an effort to disable to vehicle, Sergeant Waller fired shots into the cab of the
truck, shattering the back window. Appellant continued to fire at Sergeant Waller
several more times through the shattered back window. As the pickup truck entered
the feeder road of Highway 59, Sergeant Waller shot out the back tire, causing the
vehicle to lose control and slam into a retaining wall on a bridge. Flores immediately
exited the vehicle and jumped off of the bridge, but appellant remained stuck in the
truck because she could not open the door. As Sergeant Waller approached the
vehicle, he noticed a gun near appellant’s leg and instructed her to put her hands up
and away from the gun. Appellant put her hands up but then starting swinging her
hands and kicking her feet. Sergeant Waller pulled the door open, but appellant
refused to get out of the truck and had to be forcibly removed from the vehicle. 
Appellant was uncooperative, aggressive, and unresponsive to simple questions such
as her name. Officer Davis accompanied appellant to the hospital and described
appellant’s demeanor as hostile and angry. At the hospital, appellant mumbled,
“F***ing bi*** almost shot me; and shot her, and found the other gun.” 
          Max Hunter, a crime scene investigator, testified to the location of the firearms
that were recovered. A Glock Model 27 handgun was found in plain view in the front
passenger seat of the pickup truck. A Ruger 9-millimeter pistol was found on the
floorboard of the front passenger side of the pickup truck. Both the Glock and the
Ruger were loaded and not secured by the safety. Lastly, a Titan FIE .25 automatic
pistol was found empty in the front right passenger floorboard of the 4Runner. It is
uncontradicted that appellant was seated in the front passenger seat of the 4Runner
and the pickup truck.
          At trial, the jury was shown video footage taken from the dash cameras of two
police officers and video taken by news station KHOU. The videos clearly show the
chase and appellant taking aim and firing at Sergeant Waller. Results of a gunshot
residue test presented at trial showed that appellant’s right hand palm and left hand
back were positive for gunshot residue. 
          Appellant testified that Flores was her boyfriend and they both liked the same
drugs. Describing herself as a drug addict, appellant told the jury, “[Y]ou do what
you do to get your drugs. It doesn’t matter if it hurts your family, your friends, or any
of y’all.” Appellant testified that she and Flores had a “pattern” of stealing from
people; appellant would solicit clients for prostitution, lead the victim to a planned
location, and appellant, together with Flores, would steal the victim’s money, car, or
whatever they needed. Appellant admitted that she and Flores targeted Hispanic
males because “they’re illegals, they don’t like calling the police.” Appellant testified
that on May 28, just four days prior to the day in question, appellant and Flores used
this plan to steal the 4Runner they were driving on the day of the incident. 
          Appellant testified that, in the hours leading up to the incident, she had smoked
marijuana, snorted cocaine, and smoked crack cocaine with Flores. Appellant
testified the rent on their hotel room was due so they planned to rob someone in
Houston. At approximately 9:00 a.m. on June 2, 2006, appellant testified she
approached a man in a car offering him prostitution services. Appellant got into the
man’s car and directed him to a location to park. After the man parked, Flores walked
up to the passenger side of his vehicle and told appellant to get out of the car. Flores
then got into the man’s car and argued with the man. As the man exited his car,
Flores grabbed the man’s wallet. Because of the man’s abruptness exiting his car,
appellant testified she thought the man was going to push her. Appellant testified she
reacted by hitting the man in the head with the butt of a .25 caliber gun, causing his
head to bleed. Appellant got in the 4Runner and drove off with Flores but testified
she does not remember much after this point. Appellant stated that she remembered
hearing a noise coming from the 4Runner but did not recall getting in a wreck. 
Appellant remembered driving past Officer Davis because Flores was “freaking out”
when the officer began to follow them. Appellant stated that Flores sped up and was
not paying attention to stop signs or lights. 
          Appellant testified she did not recall waving a gun at Officer Davis. Appellant
also does not recall seeing Flores shoot Sergeant Eissler. Appellant testified she did
not see Flores point the gun at Drescher when they stole the pickup truck from the gas
station, and said she just followed Flores into the truck. 
          Appellant admitted to shooting at Sergeant Waller but said that she did so
because Flores was yelling at her to shoot him. On cross-examination, appellant
admitted that, following her arrest, she did not tell police she felt threatened by
Flores. Also, on cross-examination, appellant admitted that she and Flores were
involved in a previous police chase in 2005.II. Sufficiency of the EvidenceAppellant argues that the evidence was legally and factually insufficient to
support her convictions for (1) aggravated robbery and (2) attempted capital murder
of a peace officer.
A.      Standard of Review
          In our legal-sufficiency review, we view the evidence in the light most
favorable to the verdict and ask whether any rational trier of fact could have found
the crime’s essential elements beyond a reasonable doubt. Johnson v. State, 23
S.W.3d 1, 7 (Tex. Crim. App. 2000). In our factual-sufficiency review, we view all
of the evidence in a neutral light. Cain v. State, 958 S.W.2d 404, 408 (Tex. Crim.
App. 1997). We will set aside the verdict for factual insufficiency only if (1) the
evidence is so weak that the verdict is clearly wrong and manifestly unjust or (2) the
proof of guilt is against the great weight and preponderance of the evidence. 
Johnson, 23 S.W.3d at 11. Under the first prong of Johnson, we cannot conclude
that a conviction is “clearly wrong” or “manifestly unjust” simply because, on the
quantum of evidence admitted, we would have voted to acquit had we been on the
jury. Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006). Under the
second prong of Johnson, we also cannot declare that a conflict in the evidence
justifies a new trial simply because we disagree with the jury’s resolution of that
conflict. Id. Before finding that evidence is factually insufficient to support a verdict
under the second prong of Johnson, we must be able to say, with some objective basis
in the record, that the great weight and preponderance of the evidence contradicts the
jury’s verdict. Id. In our factual-sufficiency review, we must also discuss the
evidence that, according to appellant, most undermines the jury’s verdict. Sims v.
State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).
          The fact-finder alone determines the weight to be given contradictory
testimonial evidence because that determination depends on the fact-finder’s
evaluation of credibility and demeanor. Cain, 958 S.W.2d at 408–09. As the
determiner of the credibility of the witnesses, the fact-finder may choose to believe
all, some, or none of the testimony presented. Id. at 407 n.5; see also Lancon v.
State, 253 S.W.3d 699, 705-07 (Tex. Crim. App. 2008).
B.      Aggravated Robbery
          First, appellant challenges the legal and factual sufficiency of the evidence
supporting her conviction for aggravated robbery of Jeffrey Drescher. Specifically,
appellant points to testimony of Drescher that he saw a male (Flores) point a gun at
him but that he never actually saw appellant with a gun. Further, appellant argues
that she did not assist Flores in the commission of the offense, pointing to her own
testimony at trial that she did not see Flores point the gun at Drescher and simply
followed Flores into the truck. Appellant does not argue that an aggravated robbery
did not occur, but instead, argues that she was merely present during the incident, and
thus, was not a party to the offense.
          1.       Elements of Aggravated Robbery
          In order to convict appellant of aggravated robbery, the State was required to
prove beyond a reasonable doubt that appellant, acting as either a principal or a party,
while in the course of committing theft, intentionally or knowingly threatened or
placed Drescher in fear of imminent bodily injury or death while using or exhibiting
a deadly weapon. See Tex. Penal Code Ann. §§ 29.02, 29.03 (Vernon 2003). A
firearm is considered a deadly weapon. See Tex. Penal Code Ann. § 1.07(a)(17)(A)
(Vernon Supp. 2008). 

          2.       Law of Parties
          A person is criminally responsible as a party to an offense if the offense is
committed by their own conduct, by the conduct of another for which she is
criminally responsible, or by both. Tex. Penal Code Ann. § 7.02(a) (Vernon 2003). 
A conviction under the law of parties is appropriate if there is evidence that the
defendant was physically present and encouraged the commission of the crime by
words or other agreement. Ransom v. State, 920 S.W.2d 288, 302 (Tex. Crim. App.
1994) (op. on reh’g). Since an agreement between parties to act together in common
design can seldom be proven by words, the State often must rely on the actions of the
parties, shown by direct or circumstantial evidence, to establish an understanding or
a common design to commit the offense. Miller v. State, 83 S.W.3d 308, 314 (Tex.
App.–Austin 2002, pet. ref’d). The agreement, if any, must be made before or
contemporaneous with the criminal event, but in determining whether the accused
participated as a party, the court may look to events occurring before, during and after
the commission of the offense, and may rely on actions of the defendant which show
an understanding and common design to do the prohibited act. Beier v. State, 687
S.W.2d 2, 3-4 (Tex. Crim. App. 1985); Miller, 83 S.W.3d at 314. Circumstantial
evidence may suffice to show that one is a party to an offense. Wygal v. State, 555
S.W.2d 465, 469 (Tex. Crim. App. 1977); Miller, 83 S.W.3d at 314.
          While mere presence at the scene is not enough to sustain a conviction, that
fact may be considered in determining whether an appellant was a party to the
offense. Valdez v. State, 623 S.W.2d 317, 321 (Tex. Crim. App. 1979) (op. on reh’g);
Miller, 83 S.W.3d at 314. If the evidence, however, shows the mere presence of an
accused at the scene of an offense, without more, then it is insufficient to sustain a
conviction as a party to the offense. Valdez, 623 S.W.2d at 321; Scott v. State, 946
S.W.2d 166, 168 (Tex. App.–Austin 1997, pet. ref’d).
          3.       Legal Sufficiency
          Viewing the evidence in a light most favorable to the jury’s verdict, the record
shows that appellant was present during the aggravated robbery and encouraged the
commission of the crime. The evidence shows that appellant and Flores stole
Drescher’s truck at gunpoint. Drescher testified that he saw Flores get out of the
4Runner and point a firearm at him while screaming something at him. Drescher
testified appellant willingly followed Flores into the pickup truck, climbing over
Flores to get into the truck before driving away. 
          There is evidence in the record indicating that appellant was acting with Flores
under a common scheme. Officer Davis testified that appellant was waving a gun en
route to the gas station. The Trace Evidence Manager, William Davis, testified that
appellant tested positive for gunshot residue. Appellant testified she was aware that
Flores had a gun, even though she claims she did not see him point it at Drescher. 
Drescher testified that appellant did not seem to be accompanying Flores into the
truck against her will. Drescher testified that appellant was “maybe two steps
behind,” but that the entire encounter happened in a “split second.” Further, on the
stand at trial, appellant used the phrase, “[w]here we took the truck.” (Emphasis
added).
          The record shows that, in the days leading up to the taking of Drescher’s
vehicle, appellant and Flores planned to rob people to get money to pay for hotel rent
and to feed their drug habit. Appellant admitted that she was guilty of armed robbery
of the man she and Flores robbed when she hit the man in the head with the butt of
her gun. Appellant testified that the evening before the day in question, she and
Flores planned to lure a victim by appellant’s soliciting clients for prostitution and
then robbing the victim with the assistance of Flores. Appellant admits that she had
acted together with Flores in the past to steal from people and then “get away” with
it.
          In determining whether a defendant participated as a party in the commission
of an offense, the fact finder may look to events that occurred before, during, or after
the offense, and may place reliance on acts showing an understanding and common
design. Ransom v. State, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994) (op. on reh’g). 
An agreement of the parties to act together in a common design seldom can be proven
by direct evidence; reliance, therefore, may be placed upon the actions of the parties,
showing either by direct or circumstantial evidence an understanding and common
design to do a certain act. Rivera v. State, 990 S.W.2d 882, 887 (Tex. App.–Austin
1999, pet. ref’d), cert. denied, 528 U.S. 1168 (2000). Evidence is legally sufficient
to convict under the law of parties when the defendant is physically present at the
commission of the offense and encourages its commission by acts, words, or other
agreement. Ransom, 920 S.W.2d at 302. 
          A rational jury could conclude from this evidence that appellant, acting as a
party, while in the course of committing theft, placed Drescher in fear of imminent
bodily injury or death while using or exhibiting a deadly weapon, namely, a firearm. 
Tex. Penal Code Ann. §§ 29.02 & 29.03 (Vernon 2003). Therefore, the evidence
is legally sufficient to support the jury’s verdict of guilt. See Miller v. State, 83
S.W.3d 308, 313–14 (Tex. App.–Austin 2002, pet. ref’d).
          4.       Factual Sufficiency
          Appellant also asserts that the evidence is factually insufficient to support the
jury’s verdict of guilt. In large part, the evidence appellant points to in support of her
argument is her own testimony that she did not know or remember events and that she
felt threatened and pressured by Flores.
          Appellate courts should afford almost complete deference to a jury’s decision
when that decision is based on the evaluation of credibility. Lancon v. State, 253
S.W.3d 699, 705 (Tex. Crim. App. 2008). The jury is in the best position to judge
the credibility of a witness because it is present to hear the testimony, as opposed to
an appellate court who relies on the cold record. Id. The jury may choose to believe
some testimony and disbelieve other testimony. Id. at 707. 
          While it is true that appellant testified at trial that she was scared and
intimidated by Flores, she also testified that Flores was her boyfriend and they both
“do the same drugs.” Appellant testified that she had been in a police high speed
chase in 2005 with Flores after Flores had stolen a woman’s purse and appellant
helped him to get away. While they were both incarcerated for the 2005 chase, Flores
and appellant wrote letters to each other. Further, the incident in question happened
less than 30 days after their release.
          On cross-examination, appellant admitted that she did not tell police in her
initial statement that she had been pressured by Flores to participate in the offenses. 
Appellant did not indicate that she was acting against her will until trial. The jury
could have reasonably found her testimony not credible.
          Weighed in a neutral light, the evidence is not so weak that the verdict is
clearly wrong and unjust. Laster v. State, 275 S.W.3d 512, 518 (Tex. Crim. App.
2009). Also, there is no objective basis in the record to conclude that the great weight
and preponderance of the evidence contradicts the jury’s verdict. Watson v. State, 204
S.W.3d 404, 417 (Tex. Crim. App. 2006). We hold the evidence is factually
sufficient to support the conviction for aggravated robbery.
C.      Attempted Capital Murder of a Peace Officer
          Second, appellant challenges the legal and factual sufficiency of the evidence
supporting her conviction for attempted capital murder of Sergeant Mike Waller, a
peace officer. 
          1.       Elements of Attempted Capital Murder
          In order to convict appellant of attempted capital murder, the State was
required to prove beyond reasonable doubt that appellant, with the intent that the
offense of murder be committed, intentionally shot at Sergeant Waller, a peace officer
acting in the lawful discharge of his official duty, knowing him to be a peace officer. 
Tex. Penal Code Ann. § 15.01 (Vernon 2003), § 19.03 (Vernon Supp. 2008). 
2.Legal Sufficiency
          In her first point, despite her own testimony that she shot at Sergeant Waller,
appellant challenges the legal sufficiency of the evidence supporting her conviction
for attempted capital murder of Sergeant Waller. Viewed in the light most favorable
to the jury’s verdict, the evidence shows that appellant shot at Sergeant Waller on at
least five occasions. Sergeant Waller testified that he saw appellant fire shots from
the passenger side of the vehicle, taking direct aim at Sergeant Waller’s car. 
Sergeant Waller identified appellant in the courtroom as the passenger who fired a
gun at him. Additionally, videos admitted at trial clearly depict appellant leaning out
of the passenger window, taking aim, and firing at Sergeant Waller. Sergeant Waller
testified that he knew appellant was actually trying to shoot him because he saw the
muzzle of the gun pointed in his direction. The Trace Evidence Manager, William
Davis, testified that appellant tested positive for gunshot residue. Appellant admitted
at trial and in her brief that she fired the gun. Sergeant Waller testified that at the
time of the shooting he was in full uniform, driving a marked Fort Bend County
Sheriff’s Office vehicle, and had his lights and siren activated.
           A rational jury could conclude from this evidence that appellant, with the
intent that the offense of murder be committed, intentionally shot at Sergeant Waller,
a peace officer acting in the lawful discharge of his official duty, knowing him to be
a peace officer. Tex. Penal Code Ann. § 15.01 (Vernon 2003), § 19.03 (Vernon
Supp. 2008). Therefore, the evidence is legally sufficient to support the jury’s verdict
of guilt. 
3.Factual Sufficiency
          Appellant also challenges the factual sufficiency of the evidence supporting her
conviction for attempted capital murder of Sergeant Waller. The evidence appellant
points to in support of her argument is again her own testimony that she did not know
or remember events, and that she felt threatened and pressured by Flores.



          As stated above, appellate courts should afford almost complete deference to
a jury’s decision when that decision in based on the evaluation of credibility. Lancon
v. State, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). While it is true appellant
testified at trial that during the relevant events she felt scared and intimidated by
Flores, she never made these claims earlier in her statements to investigators
following the incident. Her testimony showed that Flores was her boyfriend, that they
used drugs together, and they had a pattern of planning and executing crimes
together. Thus, the jury could have inferred from other testimony and evidence that
she was not being truthful when she said she felt threatened by Flores.
          In her brief, appellant points out that she testified that, “she was not aware that
lights and sirens were chasing her.” It is unclear what issue appellant is trying to
present. Presuming appellant is arguing (contrary to her own testimony) that she did
not know she was shooting at a police officer, her assertion does not make the
evidence factually insufficient. At trial appellant testified that she remembered
driving past Officer Davis because Flores was “freaking out” when the officer began
to follow them. This testimony makes clear that she knew she and Flores were being
followed by police earlier in the chase. Also, she admitted on cross examination that
she knew she was in the middle of a high speed chase, even calling it a “police chase”
in her testimony. Thus, the jury was free to discredit appellant’s testimony that she
did not know she was being chased by lights and sirens. 
          Appellant argues that, while the State may have proved that appellant fired a
gun near Sergeant Waller, the evidence is nonetheless insufficient to prove that a
projectile was discharged from appellant’s firearm and that she intended to shoot at
Waller rather than one of the other officers or at his vehicle. Specifically, appellant
cites to Sergeant Waller’s testimony that the pistol was pointed “in the direction of the
patrol cars.”


 Additionally, Sergeant Waller testified that no bullets actually struck
him or his patrol car to his knowledge. However, evidence and testimony was
presented that make the jury’s finding reasonable. The jury heard appellant admit that
she shot at Sergeant Waller and the other officers. Appellant’s hands tested positive
for gunshot residue. Further, Sergeant Waller testified that he knew appellant was
actually trying to shoot him because he saw the muzzle of the gun pointed in his
direction. Thus, Sergeant Waller’s testimony is clear evidence that appellant was
shooting at him specifically. Appellant is correct in noting that Sergeant Waller’s
testimony may also suggest that appellant shot at other officers. But even if true, that
would not absolve appellant of guilt for attempted capital murder of Sergeant Waller. 
Rather, that fact would make appellant also guilty of attempted capital murder of the
other officers.
          Weighed in a neutral light, the evidence is not so weak that the verdict is clearly
wrong and unjust. Laster v. State, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009). 
Also, there is no objective basis in the record to conclude that the great weight and
preponderance of the evidence contradicts the jury’s verdict. Watson v. State, 204
S.W.3d 404, 417 (Tex. Crim. App. 2006). 
                                                                                        III. Conclusion
          Having overruled all of appellant’s issues on appeal, we affirm the judgment of
the trial court in both causes. 
                                                                  
                                                                        George C. Hanks, Jr.
                                                                        Justice
 
Panel consists of Justices Keyes, Alcala, and Hanks.
 
Do not publish. Tex. R. App. P. 47.2(b)